```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
                       ATLANTA DIVISION

LEONARD ROWE,                     :    HABEAS CORPUS
BOP ID 37718-019,                 :    28 U.S.C. § 2241
     Petitioner,                  :
                                  :
     v.                           :    CIVIL ACTION NO.
                                  :    1:14-CV-1193-RWS-ECS
RALPH CHERRY, Warden,             :
     Respondent.                  :
```

**FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on civil contemnor Leonard Rowe's counseled "Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241" [Doc. No. 1]; the United States of America's "Statement of Interest" [Doc. No. 7]; Warden Ralph Cherry's "Response to the Court's Show Cause Order Regarding Petition for Habeas Corpus" [Doc. No. 8]; Mr. Rowe's counseled "Reply Brief in Opposition to Statements of Interest of Respondent and United States of America" [Doc. No. 9], and Mr. Rowe's pro se "Statement Concerning His Intent to Release Liens" [Doc. No. 10]. Mr. Rowe's Reply Brief and pro se Statement were filed on June 9, 2014. For the reasons set forth below, the undersigned **RECOMMENDS** that Mr. Rowe's § 2241 Petition be **DISMISSED WITHOUT PREJUDICE**.

**I.
Background**

This case arises out of a civil lawsuit that Mr. Rowe and others initiated in 1998 in the United States District Court for

the Southern District of New York. See Rowe Entm't, Inc. v. The William Morris Agency, Inc., No. 1:98-CV-8272-RPP (S.D.N.Y. Nov. 19, 1998) (the "New York Case"). In 2005, the Honorable Robert P. Patterson granted summary judgment to the defendants in the New York Case, and the United States Court of Appeals for the Second Circuit affirmed this decision later the same year. See Rowe Entm't, Inc. v. The William Morris Agency, Inc., 167 F. App'x 227 (2d Cir. 2005), cert. denied, 549 U.S. 887 (2006).[1]

The New York Case lay dormant until 2012 when Mr. Rowe filed a pro se motion and other papers seeking relief from the judgment, claiming that certain defendants, their attorneys, and Mr. Rowe's own former attorneys had conspired to conceal and destroy evidence. See, e.g., New York Case [Doc. Nos. 755, 756, 757, 758 therein]. When Mr. Rowe sought to take discovery in connection with his motions, seeking to reopen the case, Judge Patterson issued an Order on June 12, 2012, stating as follows:

> Since Plaintiff's motion under Rule 60(b) has not been granted, Plaintiff has no standing at this time to try to use court procedures to further his cause or for discovery purposes. . . . Plaintiff Leonard Rowe is being warned that during the pendency of this

---

[1] This case is unrelated to Mr. Rowe's 1988 criminal conviction in this Court for (A) conspiracy to commit wire fraud, (B) wire fraud, and (C) interstate transportation of stolen goods, securities or money in excess of $5,000. See United States v. Rowe, No. 1:88-CR-67-2 (N.D. Ga. 1988), aff'd, 906 F.2d 654 (11th Cir. 1990).

2

> motion any further actions of this type will be considered sanctionable.

Id. [Doc. No. 778 therein at 1-2].

Nevertheless, in September 2012, Mr. Rowe filed a motion to compel production of documents, see id. [Doc. No. 842 therein], prompting Judge Patterson, in November 2012, to enter an Order directing Mr. Rowe to show cause why he should not be sanctioned, see id. [Doc. No. 846 therein]. In the same Order, Judge Patterson also denied as meritless Mr. Rowe's motion seeking relief from the judgment in the New York Case.

Rather than appeal, Mr. Rowe then filed a "Motion to Disqualify Judge Robert P. Patterson for His Personal Bias, Prejudice, and Corruption Against The Plaintiff Pursuant to 28 U.S.C. 144, 455," alleging that Judge Patterson "colluded with the Defendants and Plaintiff's former attorneys in a corrupt and sinister conspiracy." Id. [Doc. No. 856 therein at 1-2]. Judge Patterson denied this motion as well. See id. [Doc. No. 861 therein].

Mr. Rowe, however, persisted in seeking to overturn the judgment in the New York Case. He next threatened to file more than a billion dollars in commercial liens against the defendants and the attorneys in the New York Case, prompting Judge Patterson in November 2013 to enter orders directing Mr. Rowe to show cause

AO 72A
(Rev.8/82)

why he should not be permanently enjoined pursuant to Federal Rule of Civil Procedure 65, The All Writs Act, 28 U.S.C. § 1651, and the Court's inherent powers, from a list of clearly-specified activities (the "Prohibited Activities"), and temporarily restraining him from engaging in those Prohibited Activities. See id. [Doc. Nos. 865, 873 therein]. On December 5, 2013, Mr. Rowe moved to vacate the temporary restraining orders, see id. [Doc. No. 878 therein], but this motion was mooted when, at the conclusion of a hearing the next day in which Mr. Rowe declined to participate, Judge Patterson entered a Permanent Injunction, see id. [Doc. No. 883 therein].

Ignoring the Permanent Injunction, Mr. Rowe engaged in Prohibited Activities, and Judge Patterson issued two "Order[s] to Show Cause for Contempt of Court Against Leonard Rowe" on January 16, 2014. See id. [Doc. Nos. 886, 891 therein]. Mr. Rowe replied in writing that he believed that Judge Patterson lacked jurisdiction over him, that he would not appear at the contempt hearing, and that he intended to continue engaging in Prohibited Activities. See id. [Doc. Nos. 895, 902 therein]. Mr. Rowe also demanded that "[i]f further actions of mine are to be addressed in the future, please instruct all that they are to be done in the Northern District of Georgia Federal Court system." See id. at 2.

AO 72A
(Rev.8/82)

On February 13, 2014, Judge Patterson issued two more show cause orders directing Mr. Rowe to appear in person or by telephone to show why he should not be held in contempt for engaging in Prohibited Activities in violation of the Permanent Injunction. See id. [Doc. Nos. 921, 922 therein]. Mr. Rowe declined to appear in person or by phone. On February 19, 2014, and February 20, 2014, Judge Patterson found Mr. Rowe in contempt in an order and supplemental order. See id. [Doc. Nos. 929, 931 therein].

On February 28, 2014, Judge Patterson issued an Order (1) setting a hearing for March 7, 2014, to determine whether Mr. Rowe should be arrested and held in civil confinement, and (2) directing the parties to be prepared to address both personal and subject matter jurisdiction. See id. [Doc. No. 933 therein]. Once again, Mr. Rowe declined to participate in person or by phone, and, after the March 7 hearing, Judge Patterson entered an Order directing the United State Marshals Service to arrest and confine Mr. Rowe until he purged himself of his contempt by, among other things, releasing the commercial liens he had filed. See id. [Doc. No. 936 therein]. Mr. Rowe failed to challenge the Permanent Injunction or contempt orders through a motion for reconsideration or on direct appeal.

Roughly one month later, on April 9, 2014, Mr. Rowe was arrested in the Northern District of Georgia. See United States v.

Rowe, No. 1:14-MJ-347 (N.D. Ga. April 9, 2014) [Unnmrd Dkt. Entry dated April 9, 2014 (reporting "Arrest of Leonard Rowe on a CIVIL CONTEMPT ORDER from the Southern District of New York")].

After his arrest, Mr. Rowe retained counsel. See id. Mr. Rowe then initiated this case by filing a "Petition For A Writ of Habeas Corpus Under 28 U.S.C. § 2241," [Doc. No. 1], and, as noted above, this case is now before the Court on pleadings submitted by Mr. Rowe, the United States of America, and Ralph Cherry, the warden of the privately-operated detention facility in which Mr. Rowe is being held.

## II.
## Discussion

As the Supreme Court has observed in a related context, "habeas corpus is a guard against extreme malfunctions in the . . . justice system[], not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (discussing § 2254). Consequently, there is a well-developed body of law requiring that habeas petitioners first exhaust all other available remedies before being permitted to proceed on the writ.

Circuit courts that have addressed habeas challenges to federal civil contempt orders have concluded that "the general rule of exhaustion has been extended to federal detainees as well." See, e.g., Timms v. Johns, 627 F.3d 525, 530 n.5 (4th Cir. 2010)

(citing <u>Boumediene v. Bush</u>, 553 U.S. 723 (2008)).  And, although the United States Court of Appeals for the Eleventh Circuit does not appear to have addressed this issue directly, its decisions in § 2241 cases make it abundantly clear that when other remedies are available – <u>e.g.</u>, administrative relief through the Federal Bureau of Prisons – exhaustion is required.  <u>See, e.g.</u>, <u>Skinner v. Wiley</u>, 355 F.3d 1293, 1295 (11th Cir. 2004) ("hold[ing] that prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements"); <u>United States v. Williams</u>, 425 F.3d 987, 990 (11th Cir. 2005) (collecting cases).

   In some instances, the Eleventh Circuit has treated a habeas petitioner's failure to exhaust administrative remedies as "jurisdictional," concluding that a petitioner's failure to exhaust strips the district court of the power to grant relief altogether. <u>See, e.g.</u>, <u>McGee v. Warden</u>, 487 F. App'x 516, 518 (11th Cir. 2012); <u>but see</u> <u>Gonzalez v. Thayer</u>, 132 S. Ct. 641, 648 (2012) (cautioning that "if Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional.").  In other cases, the Eleventh Circuit has treated a habeas petitioner's failure to exhaust administrative remedies as a "ripeness" issue, that similarly precludes the grant of relief.  <u>See, e.g.</u>, <u>United States v. Whittingham</u>, 544 F. App'x 928, 929 (11th Cir. 2013).  Thus, where, as here, Mr. Rowe elected

7

neither to seek reconsideration of the Permanent Injunction and contempt orders in the district court in New York, nor to appeal the injunction and orders to the Second Circuit, he is not entitled to federal habeas relief.

Mr. Rowe's retained attorneys in this case argue that Mr. Rowe was "only a pro se litigant," unaware of his appeal rights, and that he was "under threat of sanction for any new filings in the Southern District of New York court." [Doc. No. 4 at 6]. Neither of these arguments have any merit. First, Mr. Rowe – who is an experienced civil litigant in federal court and who ultimately retained three attorneys to represent him in these habeas proceedings – plainly had the capacity to retain counsel to advise him with respect to his avenues of attack on the judgment in the New York Case. He nevertheless elected to proceed pro se. Second, there was no broad "threat of sanction for any new filings" in the New York Case. Rather, Mr. Rowe was ordered on June 12, 2012, to stop attempting to initiate or pursue discovery in connection with his motion to vacate the judgment in the New York Case. See New York Case [Doc. No. 778 therein at 1-2]. Indeed, Mr. Rowe continued to submit other types of filings to Judge Patterson.

Mr. Rowe could have filed motions for reconsideration of the Permanent Injunction and contempt orders, or he could have filed

8

notices of appeal.[2]  It appears from Mr. Rowe's own subsequent filings, however, that he chose to forego further proceedings in New York when he demanded that "[i]f further actions of mine are to be addressed in the future, please instruct all that they are to be done in the Northern District of Georgia Federal Court system." See id. [Doc. Nos. 895 therein at 2, 902 therein at 2]. He thumbed his nose, in other words, at the district court in New York, before whom he had multiple available remedies.

Even at this stage, Mr. Rowe appears to have an avenue for seeking relief available in the New York Case, either before Judge Patterson and/or the Second Circuit Court of Appeals.  Mr. Rowe may file a motion for reconsideration of the Permanent Injunction and/or contempt orders under Federal Rule of Civil Procedure 60(b) and appeal from any decision, if adverse, on that motion. In any such proceedings, Mr. Rowe should be free to address his contentions made in this case that the "Court lacked subject matter jurisdiction and personal jurisdiction," the "Order for arrest was improperly issued in a closed case," "[a]n unlawful condition [was]

---

[2]  Mr. Rowe was also given multiple opportunities to appear in response to Judge Patterson's show cause orders to contest the issuance of the injunction, the findings of contempt, and the order for his arrest. Indeed, Mr. Rowe was specifically invited by Judge Patterson to address the personal and subject matter jurisdiction issues he now asserts warrant federal habeas relief. Mr. Rowe elected not to do so.

placed upon Petitioner's release," and "[t]here is no statutory authority for the injunction and Order for confinement issued." [Doc. No. 1 at 6-8].

Mr. Rowe will, however, face a high barrier to obtaining relief in view of the well-established Supreme Court precedent that a district court has "inherent power to enforce its judgments," Peacock v. Thomas, 516 U.S. 349, 356 (1996), as well as the "inherent power to enforce compliance with [its] lawful orders through civil contempt," Shillitani v. United States, 384 U.S. 364, 370 (1966). Given that "[t]he paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command," UMWA v. Bagwell, 512 U.S. 821, 828 (1994), and the fact that Mr. Rowe was given repeated opportunities to be heard and to raise any objections, Mr. Rowe's arguments of lack of jurisdiction and illegality may not carry much weight. But regardless of his prospects for success, he should be seeking relief in the federal court in New York, not here in the Northern District of Georgia. A petition for writ of habeas corpus in this Court is not ripe.

Moreover, even if this Court is not barred as a jurisdictional matter, or for reasons of ripeness, from considering Mr. Rowe's § 2241 Petition, federal habeas courts should in some circumstances

forebear from proceeding for prudential reasons. As the Fourth Circuit observed in Timms:

> Under 28 U.S.C. § 2241, federal district courts are granted broad authority, "within their respective jurisdictions," 18 U.S.C. § 2241(a), to hear applications for writs of habeas corpus filed by persons claiming to be held "in custody in violation of the Constitution or laws or treaties of the United States." Id.; see Rasul v. Bush, 542 U.S. 466, 473 (2004); id. at 483-84 (noting that "[s]ection 2241, by its terms, requires nothing more" than "the District Court's jurisdiction over petitioners' custodians"). However, it has long been established that the district court's discretion to entertain habeas petitions and exercise the power of the writ is not boundless. "[P]rudential concerns, such as comity and the orderly administration of criminal justice, may require a federal court to forgo the exercise of its habeas corpus power." Munaf v. Geren, 553 U.S. 674, 693 (2008) (citation and internal quotation marks omitted); see also Boumediene v. Bush, 553 U.S. 723 (2008) (noting that there may be "prudential barriers to habeas corpus review" even where "there is no jurisdictional bar"); Francis v. Henderson, 425 U.S. 536, 539 (1976) ("This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power."). "The principle that a habeas court is not bound in every case to issue the writ follows from the precatory language of the habeas statute, and from its common-law origins." Munaf, 553 U.S. at 693 (internal quotation marks and citation omitted). Section 2241(a) "provides only that a writ of habeas corpus 'may be granted,'" id. (quoting 28 U.S.C. § 2241(a)), and Section 2243 "directs federal courts to 'dispose of habeas petitions as law and justice require,'" id. (quoting 28 U.S.C. § 2243 (alteration omitted)).
>
> Accordingly, "even where a habeas court has the power to issue the writ," the question remains "whether . . . that power ought to be exercised." Munaf, 553 U.S. at 693 (internal quotation marks and alteration omitted); see Francis, 425 U.S. at 539. As a general rule, in the

11

> absence of "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent," Bowen v. Johnston, 306 U.S. 19, 27 (1939), courts "require[] exhaustion of alternative remedies before a prisoner can seek federal habeas relief." Boumediene, 128 S. Ct. at 2274. While habeas corpus is "always available to safeguard the fundamental rights of persons wrongly incarcerated," it "is the avenue of last resort." Martin-Trigona v. Shiff, 702 F.2d 380, 388 (2d Cir. 1983) (noting that "habeas corpus traditionally has been accepted as the proper vehicle to challenge the constitutionality of an order of imprisonment from which there is no route of appeal")).

Timms, 627 F.3d at 530-31 (footnote omitted)(citing Stack v. Boyle, 342 U.S. 1 (1951)(applying rule of exhaustion to bail decision under Eighth Amendment).[3]

Accordingly, in the circumstances presented in this case – where Mr. Rowe did not exhaust remedies available to him in the New York Case via appeal and still has remedies available to him, including a motion for reconsideration and any related appeal - the

---

[3] In addition to arguing that Mr. Rowe should be excused from exhausting his available remedies in the New York Case because of his pro se status and "fear of filing," Mr. Rowe argues in his reply brief that the "cause and prejudice" standard applicable under 28 U.S.C. § 2255 does not apply where his collateral attack is based upon jurisdictional grounds, and thus there is no procedural default from his failure to have filed a direct appeal. [Doc. 9, at 5-7]. He cites Harris v. United States, 149 F.3d 1304 (11th Cir. 1998), where the Court held that Defendant's claim of a jurisdictional defect relating to his sentencing was not procedurally defaulted and that Defendant was not required to show cause and prejudice to justify his failure to have raised such a claim at trial or on direct appeal. 149 F.3d at 1309. But in this case, whether Mr. Rowe has procedurally defaulted is not the issue before the Court. The issue is whether he is required to exhaust his available remedies.

undersigned **RECOMMENDS** that his § 2241 Petition be **DISMISSED WITHOUT PREJUDICE.**

In the event that any objections are filed to this Final Report and Recommendation, the parties, including the government through the United States Attorney, should also address in their objections whether there exists any reason why Mr. Rowe should not be transferred from the Northern District of Georgia to the Southern District of New York, where the injunction, contempt and arrest orders under which Mr. Rowe is incarcerated remain pending. In the event that this Final Report and Recommendation is adopted and the Petition is dismissed, the undersigned intends to order such a transfer to the United States District Court for the Southern District of New York instanter, as this jurisdiction is clearly the most appropriate to address the legality of Mr. Rowe's arrest and enforcement of the contempt. <u>See</u> Fed. R. App. P. 23(a).

The Clerk is **DIRECTED** to terminate the referral of this case to the undersigned.

**SO RECOMMENDED AND DIRECTED**, this 27th day of June, 2014.

*S/ E. Clayton Scofield III*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)